UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ARTHUR ECKERMANN, | Case No. 3:10-cv-00388-CWD |
| Petitioner, | |
| v. | **MEMORANDUM DECISION AND ORDER** |
| MICHAEL J. ASTRUE, Commissioner of Social Security Administration, | |
| Respondent. | |

## INTRODUCTION

Arthur Eckermann ("Petitioner") seeks review of the Commissioner of the Social Security Administration's final decision partially denying Petitioner's application for Supplemental Security Income disability benefits under Title XVI of the Social Security Act. (Dkt. 1.)  The Court has reviewed the Petition for Review and the Answer, the parties' memoranda, and the administrative record ("AR"), and for the reasons that follow, will remand to the Social Security Administration for further proceedings consistent with this Memorandum Decision and Order.

**MEMORANDUM DECISION AND ORDER - 1**

## PROCEDURAL AND FACTUAL HISTORY

Petitioner filed an application for Supplemental Security Income disability benefits on May 5, 2005, alleging that he had been disabled and unable to work since January 1, 2000, due to back injuries and mental impairments (bipolar disorder and attention deficit hyperactivity disorder). (AR 49.)  Because an applicant cannot receive Supplemental Security Income benefits for the period of time prior to the date on which the application is filed, Petitioner amended his onset of disability date to May 5, 2005. (AR 729.)  The application was denied initially and on reconsideration, and Petitioner filed a timely written request for a hearing before an Administrative Law Judge.  Two hearings were held before Administrative Law Judge ("ALJ") R. J. Payne – the first on April 14, 2008, and the second on June 27, 2008.

On August 7, 2008, ALJ Payne issued a partially favorable decision finding Petitioner disabled, due to a bulging disc in his back, beginning May 1, 2006, and extending through May 31, 2007. (AR 39.)  The ALJ found that Petitioner was not disabled within the meaning of the Social Security Act prior to May 1, 2006, or after May 31, 2007. (AR 40.)  Petitioner timely requested review by the Appeals Council, which denied Petitioner's request for review on June 4, 2010, and the ALJ's decision became the final decision of the Commissioner.  Petitioner timely filed an appeal of the Commissioner's final decision to the Court on August 4, 2010. (Dkt. 1.)  The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

**MEMORANDUM DECISION AND ORDER - 2**

At the April 14, 2008 hearing, medical experts Margaret Moore, Ph.D. and Henry Hamilton, M.D. offered testimony concerning Petitioner's mental and physical impairments.  Petitioner testified at the second hearing, held on June 27, 2008, and was represented by counsel throughout the administrative process.  Based largely on the opinions of consulting psychological expert Dr. Moore – a non-treating, non-examining medical source – the ALJ discounted the Mental Residual Functional Capacity Assessments submitted by examining psychologist Dr. James Phillips and nurse practitioner Lynn-Marie Peashka – both of whom indicated Petitioner had several "marked" and "severe" mental limitations.

Ultimately, the ALJ found Petitioner's testimony related to the severity of his impairments not credible, and found that Petitioner could perform sedentary work as defined in 20 C.F.R. § 416.967(b). (AR 40-44.)  The ALJ did not recruit the services of a vocational expert to offer an opinion concerning the effects of Petitioner's non-exertional limitations on his residual functional capacity, and instead employed the Medical-Vocational Rules as a basis for finding Petitioner not disabled. (AR 45-46.)

Petitioner was born on July 26, 1961, and was 43 years of age at the time of his application for disability benefits. Petitioner left high school in the twelfth grade, but obtained a GED while in prison. Petitioner's prior work experience is limited, but includes the following: work at a recycling plant from December of 2002 to July of 2003; approximately one month of construction work in 2002; and work as a carpenter between December of 1998 and November of 1999. (AR 293.)

**MEMORANDUM DECISION AND ORDER - 3**

## SEQUENTIAL PROCESS

The Commissioner follows a five-step sequential evaluation for determining whether a claimant is disabled. *See* 20 C.F.R. § 416.920. At step one, it must be determined whether the claimant is engaged in substantial gainful activity. The ALJ found Petitioner had not engaged in substantial gainful activity since 2003. (AR 37.) At step two, it must be determined whether the claimant suffers from a severe impairment. The ALJ found the following impairments severe within the meaning of the regulations: status post/history of two separate lumbar decompression surgeries; history of attention deficit hyperactivity disorder, combined type; and antisocial personality disorder. (*Id*.)

Step three asks whether a claimant's impairments meet or equal a listed impairment. The ALJ found that Petitioner's impairments did not meet or equal the criteria for the listed impairments. If a claimant's impairments do not meet or equal a listing, the Commissioner must assess the claimant's residual functional capacity ("RFC") and determine at step four whether the claimant has demonstrated an inability to perform past relevant work. The ALJ found that, beginning May 1, 2006, and extending through May 31, 2007, Petitioner's RFC was less than sedentary, and concluded under step four that Petitioner was not able to perform past relevant work.

If a claimant demonstrates an inability to perform past relevant work, the burden shifts to the Commissioner to demonstrate at step five – taking into consideration the claimant's RFC, age, education and work experience – that the claimant retains the capacity to make an adjustment to other work that exists in significant levels in the

**MEMORANDUM DECISION AND ORDER - 4**

national economy.  Based on the ALJ's finding that Petitioner's RFC was less than

sedentary, the ALJ concluded that between May 1, 2006 and May 31, 2007, "there were

no jobs that existed in significant numbers in the national economy that the claimant

could have performed." (AR 45.)

After finding Petitioner disabled for the time period between May 1, 2006 and

May 31, 2007, the ALJ evaluated whether Petitioner was entitled to benefits for the time

period after May 31, 2007, and applied the seven step analysis contemplated by 20 C.F.R.

§ 416.994(b)(5), which requires the Social Security Administration to periodically review

whether a claimant remains entitled to benefits after a finding of disability.  Neither party

challenges the ALJ's implementation of the seven step process and the Court will not

address whether its application was appropriate in this case.  The seven step process, as it

was applied by the ALJ, is set forth below.

At step one, the Commissioner must determine whether the claimant has an

impairment or combination of impairments which meets or medically equals the criteria

of a listed impairment. 20 C.F.R. § 416.994(b)(5)(i). The ALJ maintained the conclusion

from the initial five-step analysis that Petitioner's impairments did not meet or equal a

listed impairment.

At step two, the Commissioner must determine whether medical improvement has

occurred. 20 C.F.R. § 416.994(b)(5)(ii).  Medical improvement is any decrease in medical

severity of the impairment or impairments as established by improvement in symptoms,

signs and laboratory findings. 20 C.F.R. § 416.994(b)(1)(i).  If medical improvement has

**MEMORANDUM DECISION AND ORDER - 5**

occurred, the analysis proceeds to the third step.  At step three, the Commissioner must

determine whether the medical improvement is related to the claimant's ability to work.

20 C.F.R. § 416.994(b)(5)(iii).  Medical improvement is related to the ability to work if it

results in an increase in the claimant's capacity to perform basic work activities.  If it

does, the analysis proceeds to the fifth step.  At steps two and three, the ALJ found

medical improvement occurred related to Petitioner's ability to work. (AR 46.)

Specifically, the ALJ stated that:

> In comparing [Petitioner's] residual functional
> capacities, the undersigned finds that the claimant's functional
> capacity for basic work activities has increased.  Here, the
> undersigned notes [that,] as with [Petitioner's back surgery in]
> September 2003, after his January 2007 back surgery, the
> claimant again did not require, seek or undergo any further
> medical treatment and treatment records for April 2007,
> indicated he had been fairly active including chopping wood,
> cleaning brushes and other heavy physical activities.
>
> Similarly, he has also reported a history of attention
> deficit-hyperactivity disorder and bipolar disorder, but his
> mental health treatment has been minimal and his complaints
> and symptoms have generally been situational.  More
> importantly, he reported significant improvement and
> admitted that medication kept his symptomatology under
> control/stable.

(AR 46.)

At step five, the Commissioner must determine whether all of the claimant's

current impairments in combination are severe. 20 C.F.R. 416.994(b)(5)(v).  If all current

impairments in combination do not significantly limit the claimant's ability to perform

basic work activities, the claimant is no longer disabled.  If they do, the analysis proceeds

**MEMORANDUM DECISION AND ORDER - 6**

to the next step.  The ALJ found that "[a]t all times relevant to this decision," the Petitioner suffered from severe physical and mental impairments. (AR 37.)

At step six, the Commissioner must assess the claimant's RFC based on the current impairments and determine if he can perform past relevant work. 20 C.F.R. § 416.994(b)(5)(vi).  If the claimant has the capacity to perform past relevant work, his disability has ended.  If not, the analysis proceeds to the final step.  At the last step, the Commissioner must determine whether other work exists that the claimant can perform, given his RFC and considering his age, education, and past work experience. 20 C.F.R. § 416.994(b)(5)(vii).  If the claimant can perform other work, he is no longer disabled.  If the claimant cannot perform other work, his disability continues.  To support a finding that an individual is not disabled at this step, the Social Security Administration is responsible for providing evidence that demonstrates other work exists in significant numbers in the national economy that the claimant can perform, given the claimant's RFC, age, education, and work experience.

At the last two steps, the ALJ found that, from May of 2005 until May 2006, and from July 31, 2007 until the issuance of the decision, Petitioner retained a residual functional capacity to perform sedentary work, and that Petitioner's non-exertional limitations had "little or no effect on the occupational base of unskilled sedentary work." (AR 46) (emphasis omitted).  Based on these findings, the ALJ concluded that Petitioner was not able to perform his past relevant work in construction, as a carpenter, or as a forklift operator. (AR 44-45.)

**MEMORANDUM DECISION AND ORDER - 7**

At the final step, the ALJ applied the Medical Vocational Guideline Rules, and found Petitioner not disabled. (AR 46.)  Specifically, the ALJ stated:

> Prior to May 2006, and beginning July 31, 2007, with a residual functional capacity for *sedentary*, considering the claimant's age, education, and work experience, a finding of "not disabled" would be directed by Medical-Vocational Rules 201.27-29.  Since the additionally noted non-exertional/mental limitations have little or no effect on the occupational base of unskilled *sedentary* work, a finding of "not disabled" is appropriate under the framework of this rule.
>
> Additionally, the undersigned also takes judicial notice that vocational experts have historically and routinely testified in prior hearings that[,] given an individual with the same age, education and work experience as the claimant in this case, and the type of non-exertional limitation (which the medical expert indicated were more *mild* than *moderate*), which is present in the case at hand, would not significantly erode the occupational/job base of all unskilled *sedentary* work.

(AR 46) (emphasis in original).

Petitioner seeks review of the ALJ's denial of benefits for the time period prior to May 1, 2006 and after July 31, 2007.

## STANDARD OF REVIEW

Petitioner bears the burden of showing that disability benefits are proper because of the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A); *Rhinehart v. Fitch*, 438 F.2d 920, 921 (9th Cir. 1971). An individual will be determined to be disabled only if his physical or mental

**MEMORANDUM DECISION AND ORDER - 8**

impairments are of such severity that he not only cannot perform previous work but is unable, considering his age, education, and work experience, to engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d)(2)(A).

On review, the Court is instructed to uphold the decision of the Commissioner if the decision is supported by substantial evidence and is not the product of legal error.  42 U.S.C. § 405(g); *Universal Camera Corp. v. Nat'l Labor Relations Bd.*, 340 U.S. 474 (1951); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (as amended); *DeLorme v. Sullivan*, 924 F.2d 841, 846 (9th Cir. 1991).  Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  It is more than a scintilla but less than a preponderance, *Jamerson v Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997), and "does not mean a large or considerable amount of evidence."  *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

If the evidence can reasonably support either affirming or reversing a decision, the Court may not substitute its own judgment for that of the Commissioner. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006).  The Court, however, "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (internal quotations and citations omitted).

**MEMORANDUM DECISION AND ORDER - 9**

## DISCUSSION

Petitioner attacks the ALJ's decision on numerous grounds, citing eight specific errors containing multiple subparts, and stating that the ALJ "failed to follow proper legal standards in almost every issue decided." (Dkt. 15 at 5.)  Petitioner's assignments of error are summarized below.

First, Petitioner argues that the ALJ failed to properly evaluate the medical evidence by rejecting the opinions of an examining psychologist and treating nurse practitioner in favor of a non-treating, non-examining medical expert, and by completely failing to address the findings of several examining physicians.

Second, Petitioner argues that the ALJ committed error by failing to address the lay witness evidence submitted by Petitioner's sister concerning Petitioner's limitations.

Third, Petitioner argues that the ALJ erred by failing to provide clear and convincing reasons for finding Petitioner's testimony concerning the limiting effects of his symptoms not credible.

Fourth, Petitioner argues that the ALJ's resort to the Medical Vocational Guidelines – instead of employing the services of a vocational expert – was improper under the implementing regulations, given Petitioner's non-exertional limitations.

Finally, Petitioner asserts that the ALJ committed error by taking judicial notice of what "vocational experts have historically and routinely testified to in prior hearings" related to whether jobs existed in the national economy that Petitioner could perform.

For the reasons discussed below, the Court finds that the ALJ committed several

**MEMORANDUM DECISION AND ORDER - 10**

legal errors and will remand to the Commissioner for further proceedings consistent with this decision.

## 1.     Evaluation of the Medical Evidence

Petitioner argues that the ALJ's evaluation of the medical evidence was improper in two ways.  First, Petitioner asserts that the ALJ should not have rejected the opinions of examining psychologist James Phillips and treating nurse practitioner Lynn-Marie Peashka in favor of consulting medical expert Margaret Moore. Second, Petitioner argues that the ALJ erred by not addressing the medical opinions of several treating and examining physicians.  Both contentions will be addressed below.

### A.     Rejection of treating and examining source opinions

Psychologist James Phillips examined Petitioner in 2002, 2003, and 2007.  In an evaluation dated October 4, 2002, Dr. Phillips diagnosed Petitioner with attention deficit hyperactivity disorder ("ADHD"), antisocial personality features, and noted a Global Assessment of Functioning ("GAF") of 50, indicating serious symptoms or impairments in social or occupational functions.[1] (AR 285.) Dr. Phillips also noted "[o]ccupational problems," "[p]roblems related to the social environment," and "[p]roblems related to interaction with the legal system." (*Id*.)  In an evaluation dated February 14, 2003, Dr. Phillips states that the results of a second assessment were "suggestive of a Manic

---

[1] The Global Assessment of Functioning, or GAF, is a numeric scale used by mental health clinicians and physicians to subjectively rate the social, occupational, and psychological functioning of adults. The scale is presented and described in the Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR) published by the American Psychiatric Association.

**MEMORANDUM DECISION AND ORDER - 11**

episode[,]" and "[t]esting was also suggestive of problems thinking and interpersonal problems." (AR 289.)  In an evaluation from November of 2007, Dr. Phillips diagnosed Petitioner with bipolar disorder (most recent episode manic, severe, with psychotic features), ADHD combined type, alcohol abuse, and antisocial personality disorder features. (AR 243.)  Dr. Phillips noted a GAF score of 42, again indicating serious impairment in social and/or occupational functioning, but at a more severe level than as assessed in 2002. (*Id.*)

Dr. Phillips also submitted a Mental Residual Functional Capacity Assessment, (AR 667-670), and provided answers to written questions prepared by Petitioner's counsel. (AR 660-66.)  The Mental RFC Assessment submitted by Dr. Phillips indicates marked limitations in the following areas: to carry out detailed instructions; to sustain an ordinary routine without special supervision; to accept instructions and respond appropriately to criticism from supervisors; to get along with coworkers or peers without distracting them or exhibiting behavior extremes; to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness; and to set realistic goals or make plans independently of others. (AR 668-70.)  The Mental RFC Assessment indicates severe limitations in the following areas: to maintain attention and concentration for extended periods; to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; to work in coordination with or proximity to others without being distracted by them; to complete a normal work-day and workweek without interruptions from psychologically based symptoms and to perform at a

**MEMORANDUM DECISION AND ORDER - 12**

consistent pace without an unreasonable number and length of rest periods; and to interact appropriately with the general public. (AR 668-69.)

Lynn-Marie Peashka, a nurse practitioner who treated Petitioner, also submitted answers to written questions provided by Petitioner's counsel and a Mental RFC Assessment. (AR 691-701.)  Ms. Peashka diagnosed Petitioner with affective disorder, anxiety disorder, and a personality disorder.  And like Dr. Phillips, Ms. Peashka noted several marked and severe limitations in the Mental RFC Assessment provided to the Social Security Administration. (AR 699-701.)

Psychologist Margaret Moore, a non-treating, non-examining medical expert, offered testimony concerning Petitioner's mental limitations.  Dr. Moore evaluated Petitioner's disorders under listings 12.02 *Organic Mental Disorders*, 12.04 *Affective Disorders*, 12.06 *Anxiety-Related Disorders*, and 12.09 *Substance Addiction Disorders*. Contrary to the opinions of Dr. Phillips and nurse practitioner Peashka, Dr. Moore found that Petitioner had mild restrictions related to activities of daily living, moderate difficulties maintaining social functioning, moderate difficulties maintaining concentration, persistence or pace, and demonstrated no episodes of decompensation. (AR 41.)

Dr. Moore disagreed with the opinions of Petitioner's treating and examining medical sources for several reasons.  She noted that Petitioner's mental health symptoms seemed to be controlled with the administration of medications, and that while on medications in prison, Petitioner seemed less anxious and reported that he was doing

well. (AR 741.)  Dr. Moore also based her opinion heavily upon Petitioner's substance

use and his treating and examining physicians' failure to properly consider substance use

when rating the severity of Petitioner's mental impairments. (AR 739, 743.)  Concerning

substance use, Dr. Moore stated that "there has been some substance abuse virtually

throughout the record and . . . our ability to assess a substance free time really is limited

to the prison records when he actually seemed to do fairly well." (AR 743.)  She also

questioned the credibility of Petitioner's reported symptoms, specifically noting that

Petitioner's reported hallucinations of fire breathing monsters were atypical and, perhaps,

less than credible. (AR 742.)  Dr. Moore ultimately opined that Dr. Phillips opinions

concerning the severity of Petitioner's mental limitations were extreme from what Dr.

Moore saw in the record. (AR 743-44.)

Ninth Circuit cases distinguish among the opinions of three types of physicians:

(1) those who treat the claimant (treating physicians); (2) those who examine but do not

treat the claimant (examining physicians); and (3) those who neither examine nor treat the

claimant (non-examining physicians). *Lester v. Chatter*, 81 F.3d 821, 830 (9th Cir. 1995).

Generally, more weight is accorded to the opinion of a treating source than to non-

treating physicians. *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987).  If the treating

physician's opinion is not contradicted by another doctor, it may be rejected only for

"clear and convincing" reasons.  *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991).

If the treating doctor's opinion is contradicted by another doctor, the Commissioner may

not reject the treating physician's opinion without providing "specific and legitimate

**MEMORANDUM DECISION AND ORDER - 14**

reasons" supported by substantial evidence in the record for so doing. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983).  In turn, an examining physician's opinion is entitled to greater weight than the opinion of a non-examining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990); *Gallant v. Heckler*, 753 F.2d 1450 (9th Cir. 1984).

Under Section 423 of the Social Security Act, the Commissioner of Social Security is required to consider all of the evidence available in a claimant's case record, including evidence from medical sources. 42 U.S.C. § 423(d)(5)(B); *see also* 20 CFR § 404.1527(d) ("Regardless of its source, we will evaluate every medical opinion we receive.").  The term medical sources refers to both acceptable medical sources and other health care providers who are not acceptable medical sources. *See* 20 CFR § 416.902.  The regulations provide that "[i]n addition to evidence from the acceptable medical sources" evidence from other sources should be used to "show the severity of [a claimant's] impairment(s) and how it affects [the claimant's] ability to work." 20 CFR § 404.1513(d). This includes evidence from nurse practitioners such as Ms. Peashka. 20 CFR § 404.1513(d)(1).

Social Security Ruling ("SSR") 06-03p provides that non-acceptable medical sources should be evaluated under the same factors as all other medical opinions set forth in 20 CFR 404.1527(d) and 416.927(d).[2] *See* SSR 06-03p ("These factors represent basic

---

[2] Social Security Rulings do not have the force of law but must be given some deference as long as they are consistent with the Social Security Act and regulations. *Ukolov v. Barnhart*, 420 F.3d 1002, n.2 (9th Cir. 2005).  In *Ukolov*, the Ninth Circuit found that SSR 96-4p was consistent with the purposes of Titles II and XVI of the Social Security Act. *Id.*

**MEMORANDUM DECISION AND ORDER - 15**

principles that apply to the consideration of all opinions from medical sources who are not 'acceptable medical sources' as well as from 'other sources,' such as teachers and school counselors, who have seen the individual in their professional capacity.") These factors include: (1) how long the source has known and how frequently the source has seen the individual; (2) how consistent the opinion is with other evidence; (3) the degree to which the source presents relevant evidence to support an opinion; (4) how well the source explains the opinion; (5) whether the source has a specialty or area of expertise related to the individual's impairments; and (6) any other factors that tend to support or refute the opinion. SSR 06-03p.

Relevant for purposes of this case, SSR 06-03p provides the following: "The fact that a medical opinion is from an 'acceptable medical source' is a factor that may justify giving that opinion greater weight than an opinion from a medical source who is not an 'acceptable medical source.'" SSR 06-03p. "However, depending on the particular facts in a case, and after applying the factors for weighing opinion evidence, an opinion from a medical source who is not an 'acceptable medical source' may outweigh the opinion of an 'acceptable medical source.'" *Id*. The ruling goes so far as to say that, in certain circumstances, it may be appropriate to give the opinion of a non-acceptable medical source more weight than a treating source. *Id*. ("For example, it may be appropriate to give more weight to the opinion of a medical source who is not an 'acceptable medical source' if he or she has seen the individual more often than the treating source and has provided better supporting evidence and a better explanation for his or her opinion.")

**MEMORANDUM DECISION AND ORDER - 16**

Notwithstanding the above discussion, an ALJ is not required to accept an opinion of a treating physician, or any other medical source, if it is conclusory and not supported by clinical findings. *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). Additionally, an ALJ is not bound to a medical source's opinion concerning a claimant's limitations on the ultimate issue of disability. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). If the record as a whole does not support the medical source's opinion, the ALJ may reject that opinion. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). Items in the record that may not support the physician's opinion include clinical findings from examinations, conflicting medical opinions, conflicting physician's treatment notes, and the claimant's daily activities. *Id.*; *Bayliss v. Barnhart*, 427 F.3d 1211 (9th Cir. 2005); *Connett v. Barnhart*, 340 F.3d 871 (9th Cir. 2003); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595 (9th Cir. 1999).

Here, the ALJ expressly rejected the opinions of Dr. Phillips and nurse practitioner Peashka, stating that "the undersigned finds James Phillips', Ph.D., and Lynn Marie Peashka's, APRN, assessments of numerous 'marked' and 'severe' mental capacity limitations, to be unsupported by the evidence . . . [and] as pointed out by Dr. Moore, there was disagreement among severe [sic] examiners of his diagnosis, and there was an underlying complication of his chronic on-going polysubstance abuses, with admitted use as late as 2006 and 2007." (AR 44.)

Petitioner argues that the ALJ did not provide clear and convincing reasons for rejecting the opinions of his treating and examining medical sources. This is not the

correct legal standard.  When there is conflicting medical evidence in the record, as exists in this case, the ALJ must provide "specific and legitimate" reasons for rejecting the opinion of a treating or examining medical source. *See Murray*, 722 F.2d at 502.

As a preliminary matter, the ALJ did not analyze the medical source opinion evidence in this case under all the factors set forth in the implementing regulations and SSR 06-03p.  For instance, the ALJ failed to note the length, nature, extent, and frequency of examinations or treatment when evaluating the opinions of Dr. Phillips and nurse practitioner Peashka. *See* 20 C.F.R. 416.927(d).

In rejecting Dr. Phillips' opinion, the ALJ referred extensively to the testimony of medical expert Dr. Moore. (AR 41-42.)  This, standing alone, is not sufficient to reject an examining doctor's opinion. *Pitzer v. Sullivan*, 908 F.2d 502 (9th Cir. 1990).  However, in rejecting Dr. Phillips' opinion, the ALJ did indicate that Petitioner "reported significant improvement and admitted that medication kept his symptomatology under control/stable." (AR 44.)  The ALJ also noted that Petitioner's daily activities, including doing dishes, cooking meals, vacuuming, watching television, reading, fishing, chopping wood, cleaning brushes, and doing house work for his mother, did not support the severity of limitation indicated by Dr. Phillips and Ms. Peashka. (AR 43-44.)  These are specific and legitimate reasons for rejecting a medical source's opinion. *See Morgan*, 169 F.3d at 601-602.  Similarly, the ALJ noted that an evaluation from February 2003 "indicated that [Petitioner's symptoms] did not merit a diagnosis for bipolar disorder," and "a global assessment of functioning score of 70 was indicated, which denotes only

**MEMORANDUM DECISION AND ORDER - 18**

mild transient symptomatology with no significant impairment in social or occupational functioning." (AR 38.) This evidence in the record contradicts the opinions of Dr. Phillips and Ms. Peashka, and represents the type of specific and legitimate reasons that have been found appropriate to reject a treating source's opinion. *See Morgan*, 169 F.3d at 601-02.

Petitioner claims, and the Court agrees, that the ALJ's repeated reference to Petitioner's substance use as a reason for rejecting the opinions of Petitioner's treating and examining medical sources constituted legal error in this case. The implementing regulations contemplate that the ALJ will make an initial disability determination without regard to substance abuse. If the claimant is found disabled and evidence of substance abuse exists in the record, as it does in this case, the ALJ then is required to evaluate whether the claimant's disability would continue in the absence of substance abuse; that is, the ALJ must determine whether substance abuse is a material contributing factor to the claimant's disability. 20 C.F.R. §§ 404.1535 and 416.935. In this case, the ALJ did not conduct the necessary analysis. Rather, the ALJ concluded "that virtually all medical health assessments and opinions of records were unwittingly influenced by continuing substance abuse." (AR 43.) The inference is that the medical sources either did not know of the substance abuse, or did not properly take it into consideration in forming their opinions. Neither conclusion is supported by the record. Dr. Phillips specifically notes Petitioner's substance abuse in the evaluation from November of 2007. (AR 243.) And, as Petitioner points out, the documents submitted by Dr. Phillips specifically instructed the doctor to "disregard any impairment caused by drug and/or alcohol abuse." (AR 660.)

**MEMORANDUM DECISION AND ORDER - 19**

There is no evidence in the record, other than the speculative statements provided by Dr. Moore and the ALJ during the hearing, that Dr. Phillips ignored this instruction.

Based upon the above analysis, the Court finds that the ALJ did not consider all of the appropriate factors under the regulations and did not properly address Petitioner's substance use. However, because the ALJ provided appropriate specific and legitimate reasons for rejecting the opinions of Dr. Phillips and nurse practitioner Peashka, the Court cannot conclude that the ALJ improperly rejected these opinions as a matter of law. This does not mean, however, that the ALJ properly attributed controlling weight to the non-examining medical experts. As discussed below, the ALJ committed several legal errors requiring remand, including the failure to properly evaluate all of the relevant medical evidence and lay witness testimony. On remand, the ALJ will be required to re-evaluate all of the medical opinion evidence, explaining the weight given to each medical opinion, and evaluating the opinion evidence under the factors set forth in 20 C.F.R. § 416.927(d).

### B.    Failure to evaluate all of the medical evidence

Petitioner argues that the ALJ's failure to address all of the medical evidence, including the evaluations of examining physicians Larry Harries, M.D., and Katrina Bentley, Ph.D., as well as the treatment notes from the State agency doctors, compromised the ALJ's decision and constituted error. The Court agrees.

The Commissioner argues that the ALJ did, in fact, consider all of the relevant evidence, and notes that the ALJ specifically stated that all of the opinion evidence was considered. (AR 40.) The mere statement that an ALJ has considered all of the opinion

**MEMORANDUM DECISION AND ORDER - 20**

evidence, without actually evaluating that evidence in a decision denying disability benefits, is not sufficient.  The implementing regulations require the ALJ to consider all relevant evidence. 20 C.F.R. § 416.927(c).  The regulations also make it clear that the ALJ must evaluate every medical opinion in the record. *See* 20 C.F.R. § 416.927(f)(2)(ii).  Specifically, the regulations provide that, unless a treating source's opinion is given controlling weight, the ALJ must explain in the decision the weight given to the opinions of other examining or non-examining sources that have evaluated the claimant. *Id*. ("the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician, psychologist, or other medical specialist, as the administrative law judge must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do not work for us.")

Here, although it is clear that the ALJ accepted the opinion of consulting medical expert Dr. Moore, the ALJ did not explain in his decision the weight given to any of the medical opinions in the record.  This, in itself, does not comply with the regulations.  Dr. Bentley, an examining psychologist, diagnosed Petitioner with Bipolar Type II and ADHD. (AR 383.)  She noted that Petitioner "isolates socially," has occupational problems, "[p]roblems with access to health care services [because of lack of] income and no insurance to pay for health care," and "[o]ther psychosocial and environmental problems [including] significant persistent mental illness for which the patient has had no health care." (*Id*.)  Dr. Bentley assessed Petitioner's GAF at 45.  Dr. Harries also

**MEMORANDUM DECISION AND ORDER - 21**

examined Petitioner, noting "[p]sychological problems," and opining that Petitioner could perform some work if allowed to move around at his convenience to accommodate physical limitations. (AR 234.)

In June of 2005, Petitioner began treatment with the State Department of Health and Welfare. (*See* AR 291.)  At that time, he was diagnosed with bipolar disorder and attention deficit disorder, and assessed at a GAF of 45. (*Id*.)  Treatment notes from the State agency health care providers date from June 2005 up to December 2007. (AR 291-325, 377-417, 633-649.)

The ALJ did not discuss or explain the weight given to any of the above opinions or treatment notes.  It is the province of the ALJ, not this Court, to resolve conflicts that exist in the medical records. *See Morgan*, 169 F.3d at 601.  Here, because the ALJ failed to discuss many of the medical records, the Court cannot determine whether the conflicts in the record were properly resolved.  Put a slightly different way, the Court cannot conclude that the ALJ's decision is supported by substantial evidence when the ALJ's decision itself does not evaluate all of the relevant medical evidence.  On this ground, the case will be remanded for proper evaluation of all the relevant medical evidence under the factors set out in  20 C.F.R. 416.927(d).

## 2.      Failure to Consider Lay Witness Evidence

"In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." *Stout v. Comm'r of Soc. Sec. Admin*., 454 F.3d 1050, 1053 (9th Cir. 2006).  And the Ninth Circuit has made clear that this

includes testimony from friends and family members. *Dodrill v. Shalala*, 12 F.3d 915,

919 (9th Cir. 1993) ("friends and family members in a position to observe a claimant's

symptoms and daily activities are competent to testify as to [a claimant's] condition.").

"Disregard of this evidence violates the Secretary's regulation that he will consider

observations by non-medical sources as to how an impairment affects a claimant's ability

to work." *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987).  Indeed, "lay

testimony as to a claimant's symptoms or how an impairment affects ability to work *is*

competent evidence . . . and therefore *cannot* be disregarded without comment." *Stout*,

454 F.3d at 1053 (emphasis in original).  "If the ALJ wishes to discount the testimony of

the lay witnesses, he must give reasons that are germane to each witness." *Dodrill*, 12

F.3d at 919.

     Here, the record indicates that Petitioner's sister, Charl Spencer, was present at the

hearing on April 14, 2008, and available to testify as a witness. (AR 728.)  Ms. Spencer

also submitted an affidavit, which was admitted into evidence by the ALJ. (AR203-204.)

In her affidavit, Ms. Spencer stated that she either sees or talks with the Petitioner on the

phone everyday. (AR 203.)  Concerning Petitioner's limitations, Ms. Spencer stated that:

> The limitations I see most often are [Petitioner's]
> inability to stay focused; he frequently gets off track even in
> short conversations or small tasks.  He also changes positions
> frequently i.e. sitting for a short period, then standing, then
> shifting his feet.  He is often laying down due to back pain.
> [Petitioner] gets tired easily due to pain caused by walking or
> standing.  He has trouble making long trips in a vehicle.

(AR 204.)  Ms. Spencer also briefly discussed the limited work Petitioner does for his

**MEMORANDUM DECISION AND ORDER - 23**

mother, and Petitioner's substance use. (*Id.*)  This is precisely the type of lay testimony that the regulations and Ninth Circuit deem relevant, and require to be discussed by the ALJ. *Sprague*, 812 F.2d at 1232; *Stout,* 454 F.3d at 1053.  The ALJ erred by not taking into consideration Petitioner's sister's affidavit.

**3.      Credibility**

The ALJ is responsible for determining credibility.  *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998).  The ALJ's findings must be supported by specific, cogent reasons. *Id.*  If a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints of pain based solely on lack of medical evidence.  *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005); *see also Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).  Unless there is affirmative evidence showing that the claimant is malingering, the ALJ must provide clear and convincing reasons for rejecting pain testimony.  *Burch*, 400 F.3d at 680.  General findings are insufficient; the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints.  *Reddick*, 157 F.3d at 722.

The reasons an ALJ gives for rejecting a claimant's testimony must be supported by substantial evidence in the record.  *Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1296 (9th Cir. 1999).  If there is substantial evidence in the record to support the ALJ's credibility finding, the Court will not engage in second-guessing.  *Thomas v. Barnhart*, 278 F.3d 957, 959 (9th Cir. 2002).  When the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ.  *Tackett v. Apfel*,

**MEMORANDUM DECISION AND ORDER - 24**

180 F.3d 1094, 1098 (9th Cir. 1999).

In this case, for the time period prior to May 1, 2006, and after May 31, 2007, the ALJ found that Petitioner had medically determinable impairments that could reasonably be expected to produce symptoms, but that Petitioner's statements concerning the intensity, persistence, and limiting effects of these symptoms were not credible. (AR 44.) Petitioner argues that the ALJ did not provide clear and convincing reasons for rejecting his testimony.

The ALJ cited several reasons for rejecting Petitioner's testimony concerning the severity of his symptoms – some were valid reasons for making an adverse credibility finding; others were not.  For instance, the ALJ noted that Petitioner "initially indicated that he had not used drugs since March 2005, [but] then indicated that he had used four times since his last birthday in July 2007." (AR 42.)  This was a valid reason for rejecting Petitioner's testimony. *See Batson*, 359 F.3d at 1196-97 (holding contradictions in claimant's testimony valid reason for making adverse credibility finding).  The ALJ also referred to Petitioner's daily activities in rejecting Petitioner's testimony. (AR 43, 44.) Specifically, the ALJ noted that Petitioner testified that he washed dishes, cooked meals, vacuumed, watched television, read, went fishing, did lawn work, and went grocery shopping, (AR 43.)  The ALJ also noted that, after recovering from back surgery in April of 2007, Petitioner "had been fairly active[,] including chopping wood, cleaning brushes and other heavy physical activities." (AR 44.)  Daily activities inconsistent with a claimant's alleged symptoms have been found to be an appropriate basis for making an

**MEMORANDUM DECISION AND ORDER - 25**

adverse credibility finding. *See Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002).

The ALJ also noted that Petitioner's "treatment has been minimal," (AR 44), and that "after having surgery in January 2007, [Petitioner] attended very little follow-up care." (AR 43.) From these statements, the ALJ inferred that Petitioner's symptoms must not be as severe as alleged.  Looking at the entire record, however, the above inference was impermissible.  SSR 96-7p states that "the adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek treatment."  This is because "[t]he individual may be unable to afford treatment and may not have access to free or low-cost medical services." SSR 96-7p.  Here, evidence in the record indicates that Petitioner could not afford regular treatment: he testified that he has no income (AR 763); his mother pays his bills and provides $100 per month for medication (AR 776); and the trailer Petitioner lives in is owned by his mother. (AR 776.)  Given these facts, the ALJ's inference was improper.

The ALJ also found Petitioner's allegations of disabling symptoms and limitations generally inconsistent with the clinical and objective findings. (AR 42.) However, because the ALJ did not discuss all of the medical evidence, as discussed more fully above, the Court cannot say that this conclusion is supported by substantial evidence in

**MEMORANDUM DECISION AND ORDER - 26**

the record.

Because the Court concludes that the ALJ rejected Petitioner's symptom testimony on two improper grounds, the Court "must determine whether the ALJ's reliance on such reasons was harmless error." *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008). The Ninth Circuit has stated that the relevant inquiry "is not whether the ALJ would have made a different decision absent any error, [citation to dissent omitted], it is whether the ALJ's decision remains legally valid, despite such error." *Id.* The Court finds that this inquiry does not present a close call in this case. This is not a case where the only issue on review is an adverse credibility finding in which the ALJ used one improper factor (out of many valid reasons) for rejecting the claimant's testimony. *See Batson*, 359 F.3d at 1197 (holding ALJ's reliance on one improper factor of several reasons in support of adverse credibility determination did not require remand).

Here, the Court already has determined that the case must be remanded due to the ALJ's failure to consider all of the relevant medical evidence and the lay witness testimony. The ALJ's failure to consider all of the relevant evidence, as mandated by the regulations and Ninth Circuit precedent, had a trickle-down effect, compromising several aspects of the ALJ's decision, including rejection of Petitioner's testimony concerning the severity of his symptoms. For these reasons, the Court concludes that, under the Ninth Circuit's test in *Carmickle v. Commissioner of Social Security Administration*, 533 F.3d 155 (9th Cir. 2008), the ALJ's decision would remain legally invalid even in the absence of the particular errors associated with the adverse credibility determination and must be

**MEMORANDUM DECISION AND ORDER - 27**

remanded.

On remand, the Commission shall reevaluate Petitioner's credibility taking into consideration Petitioner's limited financial resources as well as all of the medical evidence in the record.  In this regard, the Court makes no finding as to whether Petitioner's testimony concerning his limitations and symptoms should be found credible.

**4.      Use of the Medical Vocational Guidelines**

Once it is determined that a claimant cannot perform past relevant work, the burden shifts to the Commissioner to show whether the claimant can make an adjustment to other work, taking into consideration the claimant's RFC, age, education, and work experience. 20 C.F.R. 416.920(a)(4)(v).  In determining whether a claimant can make an adjustment to other work, the Commissioner "must provide evidence about the existence of work in the national economy that [the claimant] can do." 20 C.F.R. § 416.912(g).  The Commissioner can present such evidence in two ways: (a) through the testimony of a vocations expert, or (b) through reference to the Medical-Vocational Guidelines (commonly referred to as "the grids"). *See Tackett v. Apfel*, 180 F.3d 1094, 1100-1101 (9th Cir. 1999).

The grids present, in table form, a short-hand method for determining the availability and numbers of jobs for a claimant, given his or her limitations.  "The grids categorize jobs by their physical-exertional requirements and consist of three separate tables – one for each category: '[m]aximum sustained work capacity limited to sedentary work,' '[m]aximum sustained work capacity limited to light work,' and '[m]aximum

**MEMORANDUM DECISION AND ORDER - 28**

sustained work capacity limited to medium work.'" *Tackett*, 180 F.3d at 1101 (citing 20 C.F.R. pt. 404, subpt. P, app. 2, rule 200.00). "This approach allows the Commissioner to streamline the administrative process and encourages uniform treatment of claims." *Id.* (citing *Heckler v. Campbell*, 461 U.S. 458, 460-62 (1983)).

The grids, however, may be employed only where they completely and accurately represent a claimant's limitations. *Campbell*, 461 U.S. at 461. "In other words, a claimant must be able to perform the *full* range of jobs in a given category." *Tackett*, 180 F.3d at 1101 (emphasis in original). Significant non-exertional impairments, such as pain, postural limitations, or environmental limitations, "may make reliance on the grids inappropriate." *Id.* at 1101-02. If application of the grids is inappropriate given a claimant's non-exertional limitations the Commissioner should employ the services of a vocational expert to establish the availability of suitable jobs in the national economy.

In *Tackett v. Apfel*, the Ninth Circuit held that an ALJ's use of the grids constituted error where evidence existed showing that the claimant's non-exertional postural limitations "required him to change positions, shift his body, walk, or stand about *every half hour*." 180 F.3d at 1101 (emphasis in original). The court held that such non-exertional limitations precluded the claimant from performing a full range of sedentary work, which is defined as

> work involv[ing] lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a *sedentary job is defined as one which involves sitting*, a certain amount of walking and

**MEMORANDUM DECISION AND ORDER - 29**

> standing is often necessary in carrying out job duties.  Jobs
> are sedentary if walking and standing are required
> occasionally and other sedentary criteria are met.

*Id*. at 1103 (emphasis in original).  The court reasoned that, "[w]hile some sedentary jobs *may* require some walking and/or standing, others may not require any [and that] to be physically able to work the full range of sedentary jobs, the worker must be able to sit through most or all of an eight hour day." *Id*. (emphasis in original).  The court concluded that the claimant's "need to shift, stand up, or walk around every 30 minutes is a significant nonexertional limitation not contemplated by the grids," and remanded the case so that the ALJ could hear testimony from a vocational expert concerning whether jobs existed in the national economy that the claimant could perform given his limitations. *Id*. at 1104.

In this case, the ALJ concluded that, for the time periods prior to May 2006, and after July 2007, Petitioner retained the ability to perform a full range of sedentary work. (AR 40.)  Based upon this finding, the ALJ applied the grids and found that, "[p]rior to May 2006, and beginning on July 31, 2007, with a residual functional capacity for sedentary, considering the claimant's age, education, and work experience, a finding of 'not disabled' would be directed by Medical-Vocational Rules 201.27 - 29." (AR 46.)

Petitioner argues that, since evidence exists indicating his need to move around at his convenience every 30 minutes, application of the grids in this case was inappropriate. Petitioner states in his Reply brief, however, that the question of whether his non-

exertional limitations are sufficiently severe to preclude the use of the grids may be premature at this point if the Court finds that the ALJ's RFC assessment was reached through an improper evaluation of the evidence.  On this point, the Court agrees.  This case will be remanded for the ALJ to properly consider all of the relevant medical evidence, to consider the lay witness evidence, and to reassess Petitioner's credibility. The reevaluation of the evidence on remand may very well effect the Commissioner's conclusion concerning Petitioner's residual functional capacity.  Thus, the question of whether Petitioner's non-exertional limitations preclude application of the grids is premature at this time and will have to be reassessed on remand.

## ORDER

**NOW THEREFORE IT IS HEREBY ORDERED:**

1)    Plaintiff's Petition for Review (Dkt. 1) is **GRANTED**.

2)    This action shall be **REMANDED** to the Commissioner for further proceedings consistent with this opinion.

3)    This Remand shall be considered a "sentence four remand," consistent with 42 U.S.C. § 405(g) and *Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir. 2002).



DATED: September 21, 2011

_____
Honorable Candy W. Dale
Chief United States Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 31**